IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TONY ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV488 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tony Arnold, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum); Docket Entry 15 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 205-12.)[1] Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 99-103). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 27-61.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-22.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 9, 267), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since August 4, 2016, the application date.
>
> . . .
>
> 2. [Plaintiff] has the following severe impairments: gout, diabetes mellitus, hypertension, obesity[,] [] cognitive disorder and alcohol dependence.
>
> . . .

---

[1] Plaintiff applied for Disability Insurance Benefits ("DIB") on March 20, 2015, alleging an onset date of June 1, 2007. (Tr. 187-93.) The state agency denied Plaintiff's DIB claim at the initial and reconsideration levels of administrative review (Tr. 62-69, 70-78, 83-91, 95-98), and Plaintiff requested a hearing before an ALJ (Tr. 99-103). After Plaintiff filed an application for SSI on August 4, 2016 (Tr. 205-12), the Social Security Administration escalated his SSI claim, bypassing decisions at the initial and reconsideration stages of review, and placing Plaintiff's SSI claim before the ALJ with his concurrent DIB claim. (See Tr. 29.) On the day of the ALJ's hearing, Plaintiff withdrew his DIB claim (Tr. 186) due to a lack of medical evidence between his onset date and his date last insured of December 31, 2010 (see Tr. 30-33). Thus, the ALJ's decision adjudicates only Plaintiff's SSI claim. (Tr. 10-22.)

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except stooping, crouching, kneeling and crawling occasionally, and restricted to performing jobs that involve simple, routine and repetitive tasks.

. . .

5. [Plaintiff] is unable to perform any past relevant work.

. . .

9. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the [] Act, since August 4, 2016, the date the application was filed.

(Tr. 15-22 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

7

## B. Assignment of Error

In Plaintiff's sole issue on review, he contends that "[t]he ALJ failed to incorporate corresponding non-exertional limitations on the ability to stay on task where he first found that [Plaintiff] was moderately impaired in the maintenance of [concentration, persistence, or pace ('CPP')]." (Docket Entry 12 at 12 (bold font and underlining omitted).) More specifically, Plaintiff maintains that the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), "held that an ALJ does not account for a claimant's limitations in CPP by restricting the RFC or the hypothetical question to the [VE] to [simple, routine, and repetitive tasks ('SRRTs')]" (id. (citing Mascio, 780 F.3d at 638)), because "'the ability to perform simple tasks differs from the ability to stay on task . . . [and] [o]nly the latter limitation would account for a claimant's limitation in [CPP]'" (id. (quoting Mascio, 780 F.3d at 638)). According to Plaintiff, the ALJ failed to perform an explicit function-by-function analysis of Plaintiff's ability to perform mental work-related activities in violation of Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing [RFC] in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 96-8p") (id. at 12-14), and "failed to provide any explanation as to

---

[5] (...continued)
review does not proceed to the next step.").

[Plaintiff's] capability to stay on task in light of his moderate difficulties in [CPP], . . . requir[ing] remand" (id. at 15 (citing Mascio, 780 F.3d at 638)). Plaintiff's contentions miss the mark.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in CPP would not result in any limitation in the RFC. Id. A neighboring district court had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work

9

adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to why a restriction to SRRTs (see Tr. 17) sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ specifically found at step three that, although Plaintiff "ha[d] moderate difficulties" in CPP "when alcohol is a factor[,]" he could nevertheless "<u>maintain concentration and attention to perform [SRRTs]</u>." (Tr. 16 (emphasis added).) Plaintiff asserts that "the ALJ's statement that [Plaintiff] had moderate problems in maintaining [CPP] when alcohol is a factor begs the question of how often alcohol is a factor in limiting his mental functioning." (Docket Entry 12 at 15.) However, Plaintiff improperly interprets the ALJ's statement in isolation. The only evidence in the record regarding Plaintiff's alcohol consumption during the relevant period in this case from August 4, 2016 (the SSI application date), to December 21, 2016 (the date of the ALJ's decision), consists of Plaintiff's testimony that, because of his uncontrolled hypertension, he reduced his consumption to "one or two beers" and "might go a month without drinking at all" (Tr. 40), and Plaintiff's statement to consultative psychological examiner Dr. Shiahna Dye that "he ha[d] been sober from alcohol" (Tr. 416).[6] Thus, when read in context, the ALJ's step three CPP finding

---

[6] Dr. Dye diagnosed Plaintiff with "Alcohol Use Disorder, Moderate . . . <u>in sustained remission</u>." (Tr. 416 (emphasis added).)

10

conveys that, although when alcohol consumption "[wa]s a factor" Plaintiff experienced moderate deficit in CPP, during the relevant period, given the dearth of evidence that alcohol remained an adverse factor for Plaintiff, he remained capable of maintaining concentration sufficiently enough to perform SRRTs. (Tr. 16.)

Plaintiff additionally contends that the ALJ's statement that "the record show[s] [Plaintiff] [wa]s able to maintain concentration and attention to perform [SRRTs]" (Tr. 16) "raises the question whether the ALJ meant that [Plaintiff] is able to maintain concentration and attention to perform SRRTs all of the time, or only some of the time." (Docket Entry 12 at 15.) That contention lacks merit. Following the step three finding, the ALJ included a limitation to SRRTs in Plaintiff's RFC (see Tr. 17), which reflects Plaintiff's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means *8 hours a day*, for 5 days a week, or an equivalent work schedule" Hines, 453 F.3d at 562 (underlining added).

Plaintiff also argues that "the ALJ's statement that 'the record' shows that [Plaintiff] could perform SRRTs is opaque; it is not an explanation." (Docket Entry 12 at 15 (citing Yauch v. Astrue, No. 09-1286-SAC, 2010 WL 3168208, at *4 (D. Kan. Aug. 10, 2010) (unpublished) ("Although the ALJ makes the conclusory statement that the medical record shows that [the] plaintiff's

impairments would not have remained at the level of severity if he stopped using illegal drugs, . . . the ALJ does not cite to any medical report, opinion or projection that would support this conclusory assertion by the ALJ." (internal citation omitted)).) Here, in contrast to Yauch, the Court can ascertain the portions of the record that support the ALJ's conclusion that Plaintiff remained able to perform SRRTs – i.e., the ALJ accorded "great weight" to Dr. Dye's opinions that Plaintiff possessed the intellectual capacity to perform SRRTs and displayed adequate CPP. (Tr. 20; see also Tr. 416.)

Second, the ALJ discussed Plaintiff's testimony regarding his mental symptoms (see Tr. 19-20), but found his statements "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision" (Tr. 19; see also Tr. 20 (reflecting ALJ's conclusion that Plaintiff's "allegation that his impairments, either singly or in combination, produce symptoms and limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record")).[7] Although Plaintiff challenges the ALJ's evaluation of Plaintiff's subjective symptom reporting as conclusory (see Docket Entry 12 at 16), the ALJ sufficiently explained his conclusion that Plaintiff's statements qualified as

---

[7] Notably, beyond stating that he suffered "brain damage" and "memory loss" following a motorcycle accident in 1983 (see Tr. 37, 43), Plaintiff did not testify to experiencing any difficulties concentrating or maintaining pace during the hearing (see Tr. 34-54).

12

"not entirely consistent with the medical evidence and other evidence" (Tr. 19). In that regard, the ALJ noted the following inconsistencies in Plaintiff's testimony:

- Although Plaintiff stated he "was homeless and living at the Durham Rescue Mission," he also testified that he "currently live[d] with his mother and aunt" (Tr. 19);

- Plaintiff "alleged memory problems and received disability from 1985 until 2002[,]" but he "testified that he returned to work in 1998, self-employed, doing floor installation until June 2007, when he lost his driver's license due to DWI" (Tr. 20); and

- Despite Plaintiff's claims of ongoing memory loss, Dr. Dye noted that Plaintiff's "recent [and] remote memory were intact" (Id.).

Third, as discussed above, the ALJ gave "great weight" (Tr. 20) to Dr. Dye's opinions that Plaintiff possessed the intellectual capacity to perform SRRTs and displayed adequate CPP (Tr. 416). Plaintiff raises several issues with respect to the ALJ's reliance on Dr. Dye's evaluation (see Docket Entry 12 at 16-18), none of which carry the day.

First, Plaintiff contends that Dr. Dye "performed the examination with limited information[,]" because she "did not review [] records [beyond those 'in connection with alcohol use'] regarding [Plaintiff's] psychiatric treatment, or [Dr. Dye] did not have access to them." (Id. (citing Tr. 414).) However, Plaintiff fails to identify which records of Plaintiff's "psychiatric treatment" Dr. Dye should have reviewed and, if she had done so,

13

how such a review would have changed her opinions favorably to Plaintiff. (See id.)

Next, Plaintiff faults the ALJ for stating that Dr. Dye found "no limitations [in] carry[ing] out, understanding, or remembering [SRRTs]" (Tr. 20 (emphasis added)), as Dr. Dye actually found no restriction in Plaintiff's ability to "[u]nderstand and remember simple instructions[,]" "[c]arry out simple instructions[,]" "make judgments on simple work-related decisions[,]" and "[u]nderstand and remember complex instructions" (Tr. 418). (Docket Entry 12 at 17.) According to Plaintiff, "Dr. Dye never stated that there were no limitations in performing '[SRRTs]' on a regular and continuing basis (i.e., while remaining on-task)." (Id.) Any error by the ALJ in equating simple instructions and simple, work-related decisions to SRRTs remains harmless where Dr. Dye ultimately concluded that Plaintiff retained the intellectual capacity to perform SRRTs (see Tr. 416), the ALJ accorded "great weight" to that opinion (Tr. 20), and the ALJ incorporated a limitation to SRRTs in Plaintiff's RFC (see Tr. 17). See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Plaintiff further maintains that "[t]here is really no explanation reconciling" the ALJ's step three finding of moderate

14

deficit in CPP (see Tr. 16) and his adoption of Dr. Dye's opinion that Plaintiff displayed "adequate [CPP]" (Tr. 20; see also Tr. 416). (Docket Entry 12 at 17 (citing Claiborne v. Commissioner, Soc. Sec. Admin., No. SAG-14-1918, 2015 WL 2062184, at *4 (D. Md. May 1, 2015) (unpublished) ("[W]hat is lacking in the instant case is any explanation of why the ALJ assessed a moderate limitation in [CPP]. If . . . the ALJ made the finding based solely upon [the claimant's] subjective allegations of issues with concentration, which the ALJ in fact did not credit, then the ALJ misapplied the [special technique for the evaluation of mental impairments under 20 C.F.R. § 404.1520a]. The conclusions at step two are supposed to represent reasoned consideration of all of the pertinent evidence, and are not simply an opportunity to give the claimant the benefit of the doubt at one step while taking it away at the next step.")).) Although the court in Claiborne disapproved of the ALJ's apparent decision to "give the claimant the benefit of the doubt" in finding a moderate limitation in CPP, Claiborne, 2015 WL 2062184, at *4, the primary problem lay in the fact the ALJ based the moderate limitation in CPP on the claimant's subjective allegations, which the ALJ later discredited. Here, however, no indication exists that the ALJ found a moderate limitation in CPP based on Plaintiff's subjective allegations, as the record lacks any statements from Plaintiff that he suffered from concentrational deficits. Rather, the ALJ based the moderate limitation on the

15

impact of alcohol, when alcohol use "is a factor[,]" on Plaintiff's ability to maintain CPP. (Tr. 16.)

Lastly, Plaintiff challenges the ALJ's statement that he accorded "great weight" to Dr. Dye's opinions "because they [we]re consistent with the record as a whole." (Docket Entry 12 at 17-18.) According to Plaintiff, the ALJ's statement in question "is not an explanation and does not permit adequate review." (Id. at 18 (citing Griffin v. Colvin, No. 7:12-CV-259-D, 2014 WL 715429, at *6 (E.D.N.C. Feb. 24, 2014) (unpublished) (remanding case, in part, because "[t]he ALJ identified no objective medical findings or other substantial evidence of record that [we]re consistent with the [state agency psychological] consultants' mental assessments" to which the ALJ accorded "significant weight") (internal quotation marks omitted)).)

Although the ALJ's stated reason for according great weight to Dr. Dye's opinions lacks specificity, it does not amount to prejudicial error under the circumstances of this case. See generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Dr. Dye's consultative evaluation constitutes the only objective medical evidence in the record during the relevant period in this case from August 4, 2016, to December 31, 2016. Moreover, Plaintiff did not

16

testify to any concentrational difficulties at the hearing. (See Tr. 34-54.) Thus, the ALJ's observation that Dr. Dye's opinions harmonized with the record remains an accurate statement.[8]

Plaintiff further contends that "[t]he ALJ also d[id] not reconcile Dr. Dye's observation that [Plaintiff's] 'cognitive ability appears to be within the low average range of intelligence.'" (Id. (quoting Tr. 416).) However, Plaintiff makes no attempt to explain how Dr. Dye's opinion that Plaintiff's "cognitive ability appears to be within the low average range of intelligence" (Tr. 416) conflicts in any way with Dr. Dye's remaining opinions regarding Plaintiff's ability to perform SRRTs and maintain adequate CPP. (See Docket Entry 12 at 18.)

Under these circumstances, the ALJ adequately explained why a restriction to SRRTs (see Tr. 17) sufficiently accounted for Plaintiff's moderate limitation in CPP. See Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where ALJ relied on opinions of consultative examiner and state agency psychologist that, notwithstanding moderate deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).

---

[8] The ALJ also discussed the only other mental health treatment in the record, which significantly predated the relevant period: "Plaintiff was admitted to Alcohol and Drug Abuse Treatment Center (ADATC) from September 7-24, 2013. . . . At discharge, [Plaintiff] exhibited a euthymic affect with linear and logical thought processes. [Plaintiff] was diagnosed with alcohol dependence and cognitive disorder with a Global Assessment for Functioning (GAF) of 70." (Tr. 18.) That evidence also harmonized with Dr. Dye's opinions.

17

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 13, 2018